IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Alan C. Turnham M.D., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-CV-326-ALB |
| | ) | |
| United States of America, | ) | (Lead Case) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | | |
| Alan C. Turnham M.D., P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-CV-328-ALB |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a federal lawsuit about a tax form. The lead plaintiff, Dr. Alan C. Turnham, is a medical doctor who practices in Dothan, Alabama, through his medical practice, Alan C. Turnham, M.D., P.A. For the tax years of 2009, 2010, and 2011, the medical practice was taxed as an S Corporation with a single shareholder—Dr. Turnham—such that the practice passed its income, losses, etc. through to him

for tax purposes.[1] During those years, the practice made substantial contributions to the Affiliated Employers Health and Welfare Trust Plan ("the PREPare Plan"), which was marketed by CJA & Associates as a 10-or-more-employer welfare benefit plan that enjoyed special tax treatment. Dr. Turnham did not file a Form 8886, reporting his participation in the plan, although such a form must be filed by anyone participating in a "reportable transaction," that is, a transaction "that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction." 26 C.F.R. § 1.6011–4(b)(2).

The United States later determined that Dr. Turnham was required to file a Form 8886 and assessed him a $10,000 penalty for each of the tax years at issue under 26 U.S.C. § 6707A. That statute imposes penalties on persons who fail to include information on their returns "with respect to a reportable transaction." *Id.* Dr. Turnham paid the penalties and filed a claim for refund of the penalty amounts. When the United States did not act on the claim within six months, he and his practice brought these lawsuits (later consolidated) seeking a refund of the penalties under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a). Litigation is pending

---

[1] Because Dr. Turnham and his practice are essentially the same entity for the purposes of these consolidated tax refund actions, this opinion will refer to them both as "Dr. Turnham" unless otherwise specified.

elsewhere regarding whether Dr. Turnham erred in claiming deductions for his payments to the PREPare Plan. This litigation presents only the following question: did Dr. Turnham participate in a "reportable transaction" when he made payments to the PREPare Plan such that he was required to file a Form 8886 with his tax returns?

As explained in more detail below, the answer to that narrow question is "yes." There is no genuine dispute of fact that the PREPare Plan in which Dr. Turnham participated is the same or substantially similar to an arrangement that the Internal Revenue Service previously identified in its published guidance, specifically IRS Notice 95–34, *Tax Problems Raised by Certain Trust Arrangement Seeking to Qualify for Exemption from Section 149*, 1995-1 C.B. 309. Accordingly, Dr. Turnham's claim for a refund of these penalty amounts is due to be denied.

**STANDARD**

In a tax refund suit, the taxpayer has the burden of proof to establish that the determination of the Commissioner of Internal Revenue is incorrect. *See Central Bank of the South v. United States*, 834 F.2d 990, 993 (11th Cir. 1987). Summary judgment is appropriate when the record indicates "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

# FACTS

Alan C. Turnham, M.D. is a medical doctor, specializing in surgical dermatology, who lives and practices medicine in Dothan, Alabama. His medical practice, Alan C. Turnham, M.D., P.A., is an Alabama business entity. Dr. Turnham is the president and sole shareholder of the P.A. For the tax years at issue, 2009, 2010, and 2011, the P.A. elected to be taxed as an S Corporation and passed its income, deductions, losses, and credits through to Dr. Turnham. Dr. Turnham and his wife, Rebecca Turnham, filed their individual income tax returns jointly. Dr. Turnham reported the following wage income from the P.A. for each year at issue in this case: $16,400 (2009), $16,800 (2010), and $106,800 (2011).

The PREPare Plan was marketed by Raymond Ankner and his company, CJA & Associates, Inc. It "was intended to constitute a '10 or more employer plan', as that term is defined in section 419A(f)(6) of the Internal Revenue Code…" (Doc. 45-2 at 1). The relevant iteration of the PREPare Plan became effective on December 1, 2003. The Plan operates through the Affiliated Employers Health & Welfare Trust, which receives participants' contributions, holds assets, and issues death benefits.

Dr. Turnham joined the PREPare Plan on December 30, 2009. For 2009, 2010, and 2011, Dr. Turnham paid the following amounts to the PREPare Plan: $283,682 (2009), $283,775 (2010), and $272,259.12 (2011). (Doc. 44 at ¶ 4). Dr.

Turnham was informed that the P.A.'s contributions to the PREPare Plan would be "tax deductible," that "plan assets are protected from creditors," and that covered employees would "receive death benefits that are not subject to income tax and may be excluded from estate taxes." (Doc. 45-7 at 3). He was further informed that death benefits would be "fully paid up at retirement and are projected to increase substantially." *Id*.

The marketing materials for the plan describe the arrangement as "[e]ssentially a Universal Life Contract split into its two parts"—that is, (1) a term life insurance contract and (2) an annuity with residual value. (Doc. 45-5 at 1). After deducting administrative fees, the plan administrator conveyed contributions to Fidelity Security Life Insurance Company ("Fidelity"), and directed Fidelity to pay annual premiums for the covered employees under a group term life insurance policy, and invest the remainder in a group annuity contract. After administrative fees, approximately 97% of the money that Dr. Turnham paid into the plan was invested in the group annuity, and 3% was used to purchase group term life insurance. The following example from 2009 is representative:

| | |
|---|---|
| Total 2009 contribution: | $283,682.00 |
| Total 2009 contribution less administrative fees: | $282,432.00 |
| Total Annuity Investment: | $274,451.98 |
| Total Group Term Life Premium: | $7,980.00 |

Fidelity's designated deposition witness pursuant to Rule 30(b)(6), Fed. R. Civ. P., explained that "the objective" was for the trust to "utilize accumulated value" that was "allocated" to a specific "individual so that when that individual retired that buildup of funds could then be used to purchase a paid-up [whole life insurance] policy." (Doc. 45-3 at 16). That policy would have an immediate "forfeiture value," which is "essentially the same thing" as a cash value. *Id.*

Fidelity assigned internal tracking numbers to Dr. Turnham's business and his employees. This allowed Fidelity to identify the portions of the group annuity contract attributable to each participating employer. Fidelity also generated a report to the plan administrator with amounts attributed to individual employees with interest on their respective share of the group annuity contract.

The plan administrator advised covered employees who terminated their employment that they could "sell a portion of all of [their] post-retirement coverage to an independent settlement company in exchange for a lump sum or stream of income payment." (Doc. 45-19 at 6). *See also* Doc. 45-18.

Dr. Turnham did not submit a Reportable Transaction Disclosure Statement (Form 8886) disclosing participation in the PREPare Plan with his tax returns for tax years 2009 through 2011.

## ANALYSIS

The court concludes, based on these undisputed facts, that Dr. Turnham's payments to the PREPare Plan were the same or substantially similar to the kind of transaction the IRS identified as a reportable transaction in Notice 95-34. Accordingly, summary judgment is due to be granted to the United States.

The relevant regulations provide that "[e]very taxpayer that has participated ... in a reportable transaction within the meaning of paragraph (b) of this section and who is required to file a tax return must file within the time prescribed in paragraph (e) of this section a disclosure statement in the form prescribed by paragraph (d) of this section." 26 C.F.R. § 1.6011-4(a). A "reportable transaction" is defined to include, among other things, a "listed transaction," which "is a transaction that is the same as or substantially similar to one of the types of transactions that the Internal Revenue Service (IRS) has determined to be a tax avoidance transaction and identified by notice, regulation, or other form of published guidance as a listed transaction." 26 C.F.R. § 1.6011-4(b)(2). "The term substantially similar includes any transaction that is expected to obtain the same or similar types of tax consequences and that is either factually similar or based on the same or similar tax strategy." 26 C.F.R. § 1.6011-4(c)(4).

Because the tax code provides favorable treatment for employer payments to welfare benefit funds that are "part of a 10 or more employer plan," 26 U.S.C. §

419A(f)(6), the IRS has issued public notice to caution taxpayers from relying on certain plans that claim to meet this definition. Notice 95-34 advised taxpayers that "[i]n recent years a number of promoters have offered trust arrangements that they claim satisfy the requirements for the 10-or-more-employer plan exemption and that are used to provide benefits such as life insurance, disability, and severance pay benefits." 1995-1 C.B. 309. The IRS warned that "[t]hese arrangements typically are invested in variable life or universal life insurance contracts on the lives of the covered employees, but require large employer contributions relative to the cost of the amount of term insurance that would be required to provide the death benefits under the arrangement." *Id.* "The trust owns the insurance contracts," and the "trust administrator may obtain the cash to pay benefits, other than death benefits, by such means as cashing in or withdrawing the cash value of the insurance policies." *Id.* These trusts "often maintain separate accounting of the assets attributable to the contributions made by each subscribing employer" such that "pursuant to formal or informal arrangements or practices, a particular employer's contributions or its employees' benefits may be determined in a way that insulates the employer to a significant extent from the experience of other subscribing employers." *Id.* The IRS warned that these arrangements may not be eligible for favorable tax status because they "may actually be providing deferred compensation" or be "separate plans maintained for each employer." *Id.*

The PREPare Plan shares several key warning signs identified in Notice 95-34. First, it invested in the equivalent of universal life insurance contracts: a life insurance contract where a term insurance element is combined with a savings element. That is how the plan was marketed, and that is how it appeared to operate in practice. Second, the employer contributions were "large relative to the cost of the amount of term insurance." 1995-1 C.B. 309. In this case, approximately 97% of the employer contribution did not go to provide term insurance. Third, "the trust owned the insurance contracts." *Id.* Fourth, the trust administrator advised at least some employees that they could get benefits by selling their share of the annuity for cash value. Fifth, the PREPare Plan maintained a separate accounting of assets per employer and reflected that separate accounting in reports and otherwise. These are just a few of the similarities between the PREPare Plan and the problematic arrangements described in Notice 95-34.

Other courts have similarly ruled that such payments to the PREPare Plan are a "reportable transaction." *See Vee's Marketing, Inc. v. United States*, 816 F.3d 499 (7th Cir. 2016); *Vee's Marketing, Inc. v. United States*, 2015 WL 2450497 (WD. Wis. May 21, 2015). The court finds *Vee's Marketing* highly persuasive. The tax periods are different in *Vee's Marketing* and in this case, but the governing 2003 plan document is the same in both cases. Moreover, as in *Vee's Marketing*, only a fraction of Dr. Turnham's contributions paid for group term insurance. The

remainder, what the Seventh Circuit called "the reserve account" or the "accumulation account" in the *Vee's Marketing* opinion, was invested in a Fidelity annuity contract. That contract coupled with the group term policy is what the Seventh Circuit aptly characterized as "in effect though not in name … a universal life insurance contract." 816 F.3d at 501.

Dr. Turnham makes very little effort to distinguish the PREPare Plan from those described in Notice 95-34 or the facts of this case from those in *Vee's Marketing*. Instead, Dr. Turnham erroneously argues that (1) an issue of fact exists as to whether the PREPare Plan's term-life-plus-annuity investment is the same as a universal life policy and (2) he relied on advice from professionals to make contributions to the PREPare Plan. Neither argument has merit.

As to the first argument, the regulations make clear that a transaction may be a reportable transaction even if it is not *identical* to one the IRS has addressed in a notice, regulation, or other form of published guidance. 26 C.F.R. § 1.6011-4(b)(2). Rather, the regulations direct that "the term substantially similar must be broadly construed in favor of disclosure." 26 C.F.R. § 1.6011-4(c)(4). Although the transactions at issue here may not be identical to those the IRS has proscribed, there is no genuine dispute that they are "substantially similar" in multiple material factors. For example, there is uncontested evidence that the plan was advertised as being "[e]ssentially, a universal life contract."

10

As to the second argument, the statute and regulations reject the notion that reliance on professionals can establish the right to recoup the tax penalty. The statute provides that "[a]ny person who fails to include on any return or statement any information with respect to a reportable transaction which is required ... to be included with such return or statement shall pay a penalty ...." 26 U.S.C. § 6707A(a). In addition, the definition of "substantially similar" in § 1.6011-4 (c)(4) specifies that "[r]eceipt of an opinion regarding the tax consequences of the transaction is not relevant to the determination of whether the transaction is the same as or substantially similar to another transaction." Although plaintiffs in some other tax refund actions have challenged the constitutionality of this strict liability statute, Dr. Turnham has not.

Finally, the court notes that it is not deciding whether Dr. Turnham was correct to deduct the payments he made to the PREPare Plan. The applicable regulation expressly provides that "[t]he fact that a transaction is a reportable transaction shall not affect the legal determination of whether the taxpayer's treatment of the transaction is proper." 26 C.F.R. § 1.6011-4(a). The court's only conclusion, which is dispositive to the resolution of this case, is that Dr. Turnham should have filed Form 8886.

## CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. The United States' motion for summary judgment (Doc. 45) is **GRANTED**.

2. Judgment is entered in favor of the United States.

3. This case is dismissed with prejudice.

4. The costs of these proceedings are taxed against the Plaintiff.

**DONE** and **ORDERED** this 29th day of May 2019.

                                           /s/ Andrew L. Brasher
                                    ANDREW L. BRASHER
                                    UNITED STATES DISTRICT JUDGE